IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | Civil Action No. 3:04-CV-1892-N |
| JEFFERSON DENTAL CLINICS, P.A., | | |
| Defendant. | | |

## AMENDED MEMORANDUM OPINION AND ORDER

Before the Court are the motion of Heather Sooter, Carol Cantu, Linda Housholder, and Esmeralda Jimenez (the "Intervenors") to intervene, filed on January 4, 2005, Defendant Jefferson Dental Clinic, P.A.'s ("JDC") Motion for Leave to File Its First Amended Answer, filed on March 9, 2005, and JDC's motion for summary judgment, filed on March 11, 2005. The disposition of each of these motions turns on the question whether a related state court judgment in favor of JDC and against Intervenors precludes the present action. Because res judicata bars Intervenors' Title VII claim, the Court grants the motion to amend and denies the motion to intervene. But because the Court finds no privity between Intervenors and the EEOC, it denies the motion for summary judgment.

### I. THE TWO CASES

JDC, which operates 11 dental clinics in the Dallas area, employed Intervenors at its headquarters until April 2003. On June 2, 2003, each of the Intervenors filed a Charge of Discrimination with the EEOC against JDC, alleging sexual harassment, constructive

AMENDED MEMORANDUM OPINION AND ORDER – PAGE 1

discharge, and retaliation. An EEOC investigation concluded there was reasonable cause to believe JDC subjected Intervenors to sexual harassment, a sexually hostile work environment, constructive discharge and retaliation in violation of Title VII. The EEOC brought the present suit August 30, 2004, alleging that JDC violated Title VII by subjecting all Intervenors to a sexually hostile work environment, terminating Intervenors Cantu, Housholder, and Sooter in retaliation for opposition to sexual harassment, and constructively discharging Jimenez for the same reason. The EEOC seeks injunctive relief against JDC as well as compensatory and punitive damages for Intervenors.

  In the meantime, Intervenors sued JDC in Texas state court. On June 19, 2003, approximately two weeks after filing their EEOC Charges, Intervenors brought suit against JDC and two of its employees, Kadri Cumur and David Alameel. Their Original Petition alleged that Cumur in particular engaged in an alarming pattern of conduct that included offensive touching, interrogating Intervenors about their sexual predilections and partners, leering at them, commenting on their clothing, makeup, and figures, and much other similiar behavior. The suit asserted claims for intentional infliction of emotional distress, wrongful discharge, and negligent retention. Intervenors did not assert claims for sexual discrimination or sexual harassment under Title VII or comparable state law. The wrongful discharge claim is nevertheless comparable to a claim of retaliation for making a sexual discrimination charge, which is forbidden under 42 U.S.C. § 2000e-3(a). Intervenors amended their petition on December 10, 2003 and again on March 12, 2004, each time without adding sexual discrimination or sexual harassment claims.

When the EEOC brought the present suit in federal court, defendant Cumur filed a plea in abatement with the state court, arguing that "[t]he present case should . . . be abated to avoid the possibility of inconsistent judgments and double-recovery arising from the same conduct." In the same motion he sought a continuance due to the then-recent death of his father in a foreign country. Intervenors opposed this motion and soon thereafter requested a trial date as soon as possible. The state court denied the plea in abatement and set the case for trial on November 15, 2004.

The EEOC involved itself in the state court action. EEOC lawyers participated when Intervenors, JDC, and the other defendants attended a court-ordered mediation on September 22, 2004. The EEOC explains that it participated in order to "ma[ke] an effort to resolve its outstanding Title VII case against the defendant, and to obtain such injunctive and other non-monetary relief . . . that the charging parties would not have been able to secure in their own right . . . ." The mediation failed to resolve any claims. EEOC lawyers attended voir dire and trial in state court. They took notes and regularly conferred with Intervenors' counsel, but did not sit at counsel table or otherwise officially participate in the trial. Intervenors' counsel turned over to the EEOC documents that it had obtained through discovery in the state suit. The EEOC has resisted producing these documents to JDC in the present case, stating they are protected "under the principle of joint representation, the attorney-client privilege, and the attorney work product privilege."

The state court trial lasted one week. JDC prevailed on all claims either by directed verdict or jury verdict. Counsel for Intervenors reports that the claim for intentional infliction of emotional distress, in particular, did not go to the jury because "the state court

AMENDED MEMORANDUM OPINION AND ORDER – PAGE 3

found that our clients' claims sounded in sex discrimination, over which the state court had no jurisdiction." The state court directed a verdict on this claim pursuant to *Hoffman – La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004), which held that intentional infliction of emotional distress is a "gap-filler" tort that does not overlap with statutory causes of action for sexual harassment.

On January 4, 2005, Intervenors moved to intervene in the present case. Their proposed complaint asserts a Title VII sex discrimination claim against JDC and seeks damages. JDC opposes the motion to intervene, asserting that Intervenors claims are barred by res judicata. Subsequently JDC moved to amend its complaint to assert res judicata as a defense, and moved for summary judgment on res judicata grounds, arguing that the EEOC should be considered in privity with Intervenors.

## II. THE COURT GRANTS THE MOTION TO AMEND

The Court should freely grant leave to amend unless there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, or futility of amendment. *Ynclan v. Dep't of the Air Force*, 943 F.2d 1388, 1391 (5th Cir. 1991). JDC amended its answer promptly after the state suit concluded, and the Court decides below that the amendment is not futile as to Intervenors. Accordingly, the Court grants the motion to amend.

### III. THE COURT DENIES THE MOTION TO INTERVENE AS FUTILE
### BECAUSE INTERVENORS' CLAIMS ARE BARRED BY RES JUDICATA

Federal Rule of Civil Procedure 24(a) provides for intervention of right when a statute confers an unconditional right to intervene. 42 U.S.C. § 2000e-5(f)(1) confers such a right upon Intervenors, as the "persons aggrieved" in an action that the EEOC brings. However, the purpose of intervention is to assert a claim or defense. FED. R. CIV. P. 24(c). Because the Court concludes that the prior judgment bars present Intervenors' Title VII claim, their intervention is futile. Accordingly, the Court denies the motion to intervene.

#### A. *Texas Res Judicata Law Applies*

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to apply state res judicata law to determine the claim preclusive effect of state court judgments. *United States ex rel. Laird v. Lockheed Martin Eng'g & Science Servs. Co.*, 336 F.3d 346, 357 (5th Cir. 2003). Accordingly, the Court applies Texas law to determine whether Intervenors' claim is precluded. There are a number of ways in which state res judicata law can preclude a federal claim. For the present question, it is enough that a claim is precluded in federal court if it would be precluded in state court. *See Matsushita Electric Industrial Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996) ("The [Full Faith and Credit] Act thus directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state.").

## B. Intervenors' Title VII Suit Would Be Barred
## in a Texas Court and Is Barred in This Court

Under Texas law, res judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996) (citing *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992)). It is a mixed question of fact and law that the trial court determines. *Ex parte Myers*, 68 S.W.3d 229, 231 (Tex. App. – Texarkana 2002, no pet.).

The party asserting res judicata has the burden to plead and prove its elements. *Brown v. Zimmerman*, 160 S.W.3d 695, 702 (Tex. App. – Dallas 2005, no pet.). These are: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Id.* The question whether claims "could have been raised" in the first action assumes the party's "exercise of diligence" to combine the claims, even if the timetables for resolving them does not completely overlap. *See Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex. 1993) (plaintiff, with diligence, could have brought claim in prior suit, though it was contingent upon outcome of other claims in that suit). It is presently undisputed that JDC obtained a final judgment on the state law claims from a court of competent jurisdiction. There is similarly no doubt that the second element is satisfied, as JDC was a defendant in the prior lawsuit. The third element requires more discussion.

In its 1992 *Barr* decision, the Texas Supreme Court resolved prior confusion and affirmed the "transactional" approach to determining when an action is "based on the same claims" as those of a prior action.  867 S.W.3d at 630-31.  Under *Barr*, "a subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit." *Id.* at 631.  Furthermore, the "determination of what constitutes the subject matter of the suit . . . requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action." *Id.* at 630; *cf. Hogue v. Royse City, Texas*, 939 F.2d 1249, 1253 (5th Cir. 1991) (applying Texas law and citing *Flores v Edinburg Consol. Indep. Sch. Dist.*, 741 F.2d 773, 777 (5th Cir. 1984)) ("'a different cause of action' is one that proceeds not only on a sufficiently different legal theory but also on a different factual footing . . . that is, an action that can be maintained even if all the disputed factual issues raised in the plaintiff's original complaint are conceded in the defendant's favor").  The inquiry also considers judicial efficiency and convenience.  *See* 837 S.W.2d at 630.  Where two claims depend upon proof of the same central facts and would form a "convenient trial unit, whereas separate lawsuits would require significant duplication of effort," judgment on one of the claims precludes a second suit on the other.  837 S.W.2d at 631; *see Laird*, 336 F.3d at 359 (applying Texas law).

Under this test, the present claims concern the same subject matter as the state court suit.  Intervenors' state law petition details conduct that any educated layperson would identify as sexual harassment.  It does so with such thoroughness and precision that the state court held the intentional infliction of emotional distress claim could not go forward because

AMENDED MEMORANDUM OPINION AND ORDER – PAGE 7

it sounded in sex discrimination, though no sex discrimination claim was before the court. The factual overlap between Intervenors' prior petition and present complaint is almost complete, such that obvious inefficiencies would arise from trying the Title VII claim in a separate court from the other claims. Finally, if the disputed facts in the original petition were assumed to be decided against Intervenors as required under *Flores*, they could not prevail on their Title VII claim.

It is equally apparent that Intervenors could have brought all their claims together in state court through exercise of diligence. State courts have jurisdiction over Title VII claims, *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820 (1990), and the EEOC was required to issue a right to sue letter upon Intervenors' written request at any time after November 30, 2003. *See* 29 C.F.R. § 1601.28(a)(1)(2005)[1]. Intervenors could have approached the 180 day delay in a number of ways. They could have delayed bringing their state law claims, or could have sought (or simply acquiesced to) abatement. Alternately, they could have added the Title VII claim by amendment. *See Barr*, 837 S.W.2d at 631 (discussing amendment as a method for diligently avoiding claim splitting). Intervenors did none of these things. It is undisputed that Intervenors had a two year statute of limitations to bring their state law

---

[1] "When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued in the charge to which the request relates is filed against the respondent other than a government, governmental agency or political subdivision, the Commission shall promptly issue such notice as described in § 1601.28(e) to all parties, at any time after the expiration of one hundred eighty (180) days from the date of filing of the charge with the Commission . . . ."

Section 1601.28(e) provides that the notice of right to sue shall include "[a]uthorization to the aggrieved person to bring a civil action under title VII or the ADA . . . within 90 days from receipt of such authorization."

claims, but they brought them only months after their terminations and two weeks after filing their EEOC Charge. In addition, Intervenors resisted state court defendant Cumur's plea in abatement and requested an early trial date. The most convincing explanation for Intervenors' haste appears in the supplemental brief: "Because of Plaintiffs' abrupt terminations by Defendant, Plaintiffs suffered immediate and severe financial problems needing expedited relief to meet their mortgage and other obligations." While the Court sympathizes with Intervenors' financial problems, the hope for a quick partial recovery is not an acceptable excuse under Texas law for subjecting defendants and courts to redundant proceedings.

Intervenors claim that in fact they diligently sought to bring their Title VII claim in state court, but they do not persuade the Court. Intervenors could have addressed their ostensible concern for statutes of limitations by seeking abatement, and there is no evidence that limitations actually threatened any of their claims. And while Intervenors claim to have sought right to sue letters, the evidence they present does not support a conclusion that they made a diligent effort to do so. Intervenors demonstrate that they requested a right to sue letter from the Texas Commission of Human Rights for related state law claims on July 16, 2004, eight months after the 180 day deadline passed. They claim the TCHR denied this request on the grounds that the EEOC had not issued a right to sue letter. Intervenors also claim – for the first time in the supplemental brief – that they "requested a Right to Sue letter from the EEOC, but the EEOC declined, stating that they were still investigating the allegations." This claim is not credible, because Intervenors fail to reference any written evidence in its support. *See* 29 C.F.R. § 1601.28(a)(1) (2005) ("When a person claiming to

AMENDED MEMORANDUM OPINION AND ORDER – PAGE 9

be aggrieved requests, *in writing*, that a notice of right to sue be issued . . . ") (emphasis added). Intervenors have worked closely with the EEOC, and regulations require the EEOC to issue a right to sue letter after 180 days upon written request. In the absence of evidence or explanation for the EEOC's purported refusal to issue the right to sue letter, the Court concludes that Intervenors did not diligently seek such a letter from the EEOC.

The court has determined that with diligence, Intervenors' Title VII claim could have been litigated together with a prior claim based on the same factual subject matter. Texas res judicata law therefore bars it. Accordingly, the Court denies the motion to intervene as futile.

### IV. JDC IS NOT ENTITLED TO SUMMARY JUDGMENT ON RES JUDICATA BECAUSE THE EEOC WAS NOT IN PRIVITY WITH THE INTERVENORS

Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). JDC moves for summary judgment solely on res judicata grounds. Because res judicata bars the relitigation of a claim as a matter of law, *see Barr*, 837 S.W.2d at 628-29 & n.1, no material issues of fact can remain if the Court holds a claim precluded.

As stated above, the elements for res judicata in Texas are: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt*, 919 S.W.2d at 652. Here again, there is no dispute that the underlying state suit was a prior final judgment on the merits by a court of competent

jurisdiction. The other two issues are in dispute. The Court concludes that the EEOC is not in privity with Intervenors, which makes it unnecessary to make a determination as to the third element.

Texas treats privity as an exception to the general rule that a person is not bound by a judgment in a suit to which it was not a party. *Amstadt,* 919 S.W.2d at 652. The purposes of the exception are to ensure that a defendant is not "twice vexed" for the same acts, and to achieve judicial economy by precluding those who have had a fair trial from relitigating claims. *Id.* at 653. Texas cases consistently state that no prevailing definition of privity exists that automatically applies to all cases involving res judicata, and that determination of who are privies requires careful examination of the circumstances of each case. *See Brown* 160 S.W.3d at 703; *Amstadt*, 919 S.W.2d at 653; *Getty Oil*, 845 S.W.2d at 800.

Nonetheless, the courts cite a list of standard circumstances that establish privity: "People can be in privity in at least three ways: (1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the main action." *Amstadt*, 919 S.W.2d at 653 (citing *Getty Oil*, 845 S.W.2d at 800-01) *cf. HECI Expiration Co. v. Neel*, 982 S.W.2d 881, 890 (Tex. 1999) ("although the circumstances of each case must be examined, generally, parties are in privity [when they meet one of these three criteria]"). The Court accordingly begins its analysis by considering these three bases for privity.

The EEOC did not control the state court action. EEOC attorneys participated in mediation, attended trial, and communicated with Intervenors' counsel, but "mere participation in a prior trial does not suffice to bar the participant on principles of res

AMENDED MEMORANDUM OPINION AND ORDER – PAGE 11

judicata, nor does knowledge of an ongoing trial." *Brown*, 160 S.W.3d at 703 (citing *Maxson v. Travis County Rent Account*, 21 S.W.3d 311, 316 (Tex. App. – Austin 1999, pet. dism'd by agr.)  Rather, a "controlling" party must participate in prior proceedings "to such an extent that it was clear that [it] had the right to direct them." *Maxson,* 21 S.W.3d at 316 (emphasis added).  JDC does not argue or present evidence that the EEOC's participation rose to this level.

The Court next considers whether Intervenors represented the EEOC's interests in the prior litigation.  The model for this type of privity is a legally authorized representative like a guardian ad litem or trustee, or someone such as a spouse or business partner who has the same rights and interests.  *E.g.*, *In re Estate of Ayala,* 986 S.W.2d 724, 727 (Tex. App. – Corpus Christi 1999, no pet.) (deeming party who brought prior action to invalidate will a representative of siblings with the same goal in subsequent suit).  In order for a litigant to function as another's representative, their interests in the suit must be *identical*.  *See Texas Real Estate Comm. v. Nagle*, 767 S.W.2d 691, 693 (Tex. 1989) ("privity does not exist merely when persons are interested in the same question, but requires an identity of interest in the legal right actually litigated"); *McGowan v. Huang*, 120 S.W.3d 452, 463 (Tex. App. – Texarkana 2003, pet. denied) (no privity between child's estate and parents of decedent child as individuals and guardian, where "the McGowans and the Estate shared many of the same interests in the result of the lawsuit, but the shared interests are not identical.").  Furthermore, in light of this identity requirement, it is difficult to conceive of a prior litigant as the purported privy's "representative" when it litigated the same subject matter without

diligently pursuing the purported privy's distinctive interests.[2]  *See Nagle*, 767 S.W.2d at 695; RESTATEMENT (SECOND) OF JUDGMENTS § 42(1)(e) (1982) ("A person is not bound by a judgment for or against a party who purports to represent him if . . . [t]he representative failed to prosecute or defend the action with due diligence and reasonable prudence, and the opposing party was on notice of facts making that failure apparent.")[3]

Intervenors did not represent the EEOC under this standard.  First, the EEOC has interests distinct from those on whose behalf it bring suits under Title VII.  Outside the specialized context of the Age Discrimination in Employment Act,[4] the EEOC "does not function simply as a vehicle for conducting litigation on behalf of private parties."  *Waffle House*, 534 U.S. at 288 (citation omitted).  Rather, the EEOC has independent statutory

---

[2] Of course, if privity were established on some ground other than representation, such as succession of interest, res judicata could foreclose an action to pursue rights that the predecessor failed to diligently pursue in a prior suit on the same subject matter.  *See infra* note 8.

[3] The Texas Supreme Court has not explicitly adopted Section 42, though it construed a comparable provision in *Ortega v. First RepublicBank Fort Worth*, 792 S.W.2d 452 (Tex. 1990).  *See id.* at 455 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 72).  The Texas Supreme Court routinely looks to the Restatement in its res judicata decisions.  *See, e.g., Getty Oil*, 845 S.W.2d at 798-99; *Barr*, 837 S.W.2d at 631; *Jeanes v. Henderson*, 688 S.W.2d 100, 104 n.4; *Benson v. Wanda Petroleum*, 468 S.W. 2d 361, 363 (Tex 1971).

[4] *See generally Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 707 (5th Cir. 2005) ("The distinctive enforcement scheme of the ADEA terminates the right of an individual to pursue an action once the EEOC commences an action to enforce the employee's rights under the statute, whereas the enforcement scheme of Title VII does not terminate the rights of the employee once the EEOC brings a suit"); *EEOC v. N. Gibson Sch. Corp.,* 266 F.3d 607, 615 (7th Cir. 2001) ("[W]e, along with the Second and Third Circuits, have emphasized the distinctive enforcement scheme of the ADEA, which places the EEOC in privity with the individual for whom it seeks relief. . . . [I]n this respect, the drafters of the ADEA consciously departed from the enforcement scheme of Title VII . . . .")

authority to bring enforcement actions for independent purposes. *See id.* at 296. Even when the EEOC "pursues entirely victim-specific relief," its choice to deploy limited resources toward a particular case serves to "vindicate the public interest, [and] not simply provide make-whole relief for the employee." *See id.* Accordingly, while Intervenors and the EEOC shared interests, "the shared interests are not identical." *Cf. McGowan*, 120 S.W.3d at 463. Furthermore, Intervenors highlighted the distinction between their interests and those of the EEOC by squandering their discrimination claims in the improvident pursuit of tangential claims. Under Title VII, The EEOC vindicates the public interest by identifying and confronting sexual harassment and other federally prohibited forms of discrimination *as such*. Intervenors failed to do so in the state action. Accordingly, Intervenors did not represent the EEOC.[5]

Nor is the EEOC in privity with Intervenors under the third traditional basis for privity. JDC's argument that the EEOC "derived" its claim from Intervenors by virtue of basing its claim on conduct that victimized them is wrong for two reasons. First, this ground traditionally encompasses only those who derive claims as successors in interest to property. *See Amstadt*, 919 S.W.2d at 644 (citing *Kirby Lumber Corp. v. Southern Lumber Co.*, 196

---

[5] The EEOC's previous resistance to producing correspondence between itself and Intervenors' counsel on the grounds that such correspondence is "protected from discovery under the principle of joint representation, the attorney-client privilege, and the attorney work product privilege" does not alter this analysis. The Court has not determined that this correspondence is in fact protected on such grounds. If facts not before the Court justified such a conclusion, such facts might also support a conclusion that Intervenors represented the EEOC's interests in the prior lawsuit for res judicata purposes. It is JDC's burden to prove the elements of res judicata, including privity. *Brown*, 160 S.W.3d at 702. On the present record, JDC does not establish prior representation.

S.W.2d 387, 388 (Tex. 1946)). Second, the Texas Supreme Court in *Nagle* rejected the contention that an administrative agency "stands in the shoes" of a former litigant simply because the agency's appearance is tied to that litigant's circumstances. *See* 767 S.W.2d at 694-95. There the court held that the Texas Real Estate Commission was not in privity with a real estate agent, though it appeared "on behalf of, and in the name of" the agent pursuant to its governing statute. *Id.* at 694. This Court accordingly does not find privity solely on the ground that Intervenors's personal circumstances provide the basis for the EEOC's appearance.

The Court next considers whether the EEOC and Intervenors are in privity on other grounds. JDC emphasizes that the three traditional grounds are not an exclusive list, and that Texas privity cases call for careful examination of each case's circumstances. It further urges the Court to find privity simply on the grounds that preclusion would be appropriate in this case as a matter of policy. Additionally, JDC relies on *Amstadt's* formulation that "[p]rivity exists if the parties share an identity of interest in the basic legal right that is the subject of litigation." *See Amstadt*, 919 S.W.2d at 653 (citing *Nagle*, 767 S.W.2d 691, 694 (Tex. 1989)). The *Amstadt* court subsequently found privity in part because for both parties, "the right at issue was the right to be compensated for injuries caused by the defective plumbing systems." *Id.* JDC argues the EEOC is in privity with Intervenors because their previous suit sought to redress the same harm that the EEOC's present suit seeks to redress.

These are substantial arguments. Res judicata seeks both to achieve judicial economy and to prevent successive suits from twice vexing a defendant for the same acts. *Amstadt*, 919 S.W.2d at 653. It would certainly promote these purposes to bar a claim when the party

AMENDED MEMORANDUM OPINION AND ORDER – PAGE 15

asserting it participated to some degree in a prior suit to redress the same harm, and with diligence could have joined its present claims to the prior suit.[6]  Additionally, *Amstadt's* discussion of res judicata appears to blend privity and "same subject matter" into a single element with the goal of adjudicating claims for the same harm in one suit, whether they are brought by one or multiple plaintiffs.[7]  Thus, the policy behind res judicata and a recent privity decision of the Texas Supreme Court each suggest that the absence of a traditional privity relationship should not excuse a party from failing diligently to avoid redundant litigation.

Nonetheless, the Court concludes the Texas Supreme Court would not hold the EEOC's claim precluded based on this rationale.  While *Amstadt* suggests that the mere ability to intervene in a prior suit on the same facts can itself establish privity, that suggestion

---

[6]It appears likely that the EEOC could have intervened and brought its present claims in the state court suit.  It claims that it could not have, because 42 U.S.C. § 2000e-5(f)(3) provides that "[e]ach United States district court . . . shall have jurisdiction of actions brought under [Title VII]" but does not mention state courts.  The Supreme Court rejected this argument with respect to individual Title VII claims in *Donnelly*.  *See* 494 U.S. at 823 ("Title VII contains no language that expressly confines jurisdiction to federal courts or ousts state courts of their presumptive jurisdiction").  The EEOC cites no reason why a different analysis would apply if it brought a Title VII action.  Given the Court's disposition of the motion, however, it need not resolve this question.

[7] The court stated: "Privity exists if the parties share in identity of interests in the basic legal right that is the subject of litigation.  To determine whether a prior and later lawsuit involved the same basic subject matter, we focus on the factual basis of the complaint.  If the second plaintiffs seek to relitigate the matter which was the subject of the earlier litigation, res judicata bars the suit even if the second plaintiffs do not allege causes of action identical to those asserted by the first.  Res judicata also precludes a second action on claims that arise out of the same subject matter and which might have been litigated in the first suit.  Under the foregoing standards, we consider whether the Knowlton plaintiffs were in privity with the Diehl plaintiffs, so that res judicata bars the Knowltons' suit."  *Id.* at 653 (internal citations omitted).

AMENDED MEMORANDUM OPINION AND ORDER – PAGE 16

is dicta. The court *found* privity based on succession in interest. 919 S.W.2d at 653. Longstanding formulations of the duty to bring related claims treat privity as a separate inquiry prior to any discussion of whether the nonparty should have intervened in an earlier suit on the same subject matter.[8] This separate inquiry – before and after *Amstadt* – has focused on the relationship between the purported privies and their respective interests in litigation, *e.g.*, *Nagle,* 767 S.W.2d at 693; *McGowan*, 120 S.W.3d at 463, not just on factual similarities underlying their cases. *See Benson*, 468 S.W.2d at 363 ("privity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same state of facts."); *Fincher v. Wright*, 141 S.W.3d 255, 261 (Tex. App. – Fort Worth 2004, orig. proceeding) (same). Furthermore, numerous Texas cases have

---

[8] *See, e.g., Abbott Labs. v. Gravis*, 470 S.W.2d 639, 642 (Tex. 1971) ("[A] party cannot relitigate matters which he might have interposed, but failed to do so in an action between the same parties or their privies in reference to the same subject matter.") (citation omitted); *Texas Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771 (Tex. 1979), *cited in Amstadt*, 919 S.W.2d at 653 ("the scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit."); *cf. Barr*, 837 S.W.2d at 630. A party that is not a privy on independent grounds does not become one under this rule. A case that JDC cites for other purposes does state the rule more favorably for JDC.. *See Dennis v. First State Bank of Texas*, 989 S.W.2d 22, 26 (Tex. App. – Fort Worth 1998, no pet.) ("res judicata prevents the relitigation of a claim that has been finally adjudicated, as well as all related matters that reasonably could and should have been litigated in the prior suit)." However, even in that case the Court first considered privity based on the relationship between the parties, and determined there was privity before moving onto the question of whether the party could have brought its claims in the prior suit. *See id.* at 27-28.

AMENDED MEMORANDUM OPINION AND ORDER – PAGE 17

found no privity – and therefore no preclusion – even where judicial efficiency and courtesy toward the opposing party would have arguably called for a single action.[9]

The Court declines to apply a holistic, judicial efficiency-based approach to privity because Texas cases have not done so.[10] Notwithstanding the broad terms in which Texas cases describe privity, JDC does not cite any published Texas case that expressly found privity in the absence of the three traditional bases. Bound to follow Texas res judicata law, the Court does not consider it appropriate to break new ground in Texas law, even in the interest of furthering stated goals of Texas res judicata. Because JDC does not establish privity under any established criterion in Texas law, the state court judgment does not bind the EEOC. Accordingly, the Court denies the motion for summary judgment as to the EEOC.

## V. CONCLUSION

Intervenors' Title VII suit is barred by a prior judgment in state court, because with diligence they could have brought it in the prior suit. However, the prior suit does not bar

---

[9] *See Benson,* 468 S.W.2d at 363-64 (driver's suit for damages arising from accident with other vehicles did not preclude his passenger's subsequent suit); *McGowan*, 120 S.W.3d at 463 (parents' suit in individual and guardian capacity did not preclude decedent child's estate from bringing subsequent action based on the same transaction); *Fincher*, 141 S.W.3d at 261 (no privity between parties alleging "identical facts and theories of recovery," where one party had an interest in attorneys' fees in addition to the parties' joint interest in maximizing a qui tam recovery, with result that venue determination as to one party did not bind the other).

[10] If the Court were to simply evaluate the totality of the circumstances, it still is not certain res judicata would be appropriate here. Intervenors and the EEOC did not diligently endeavor to consolidate the two cases into the pending state litigation, but neither did JDC. Defendant Cumur, not JDC, filed the plea in abatement that Intervenors resisted. In contrast, JDC's interest in avoiding redundant litigation appears to have peaked after the state court suit terminated in its favor.

the EEOC's Title VII suit on the same grounds, because the EEOC is not in privity with Intervenors. While this results in Intervenors indirectly receiving a second bite at the apple, which they could not accomplish directly, the Court has determined that Title VII and Texas res judicata law require it. Accordingly, the Court grants the motion to amend and denies the motion to intervene and the motion for summary judgment.

On September 20, 2005, JDC moved the Court to amend its prior Order to permit interlocutory appeal under 28 U.S.C. § 1292(b). The Court finds that the portion of this Order denying JDC's motion for summary judgment involves a controlling issue of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from that portion of this Order may materially advance the ultimate termination of the litigation. The Court stays this action pending disposition by the Court of Appeals of any interlocutory appeal of the denial of JDC's motion for summary judgment.

SIGNED November 10, 2005.

_____
David C. Godbey
United States District Judge